# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **M.S. and A.S.**

**No. 19-0925** (Marshall County 19-JA-003 and 19-JA-004)

**FILED**

**June 24, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father C.S., by counsel Michael B. Baum, appeals the Circuit Court of Marshall County's September 10, 2019, order terminating his parental rights to M.S. and A.S.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), David C. White, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental rights without employing less-restrictive alternatives and despite his significant bond with the children.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Prior to the initiation of the instant proceedings, the parents were the subjects of child abuse and neglect proceedings. During those proceedings, they were granted post-adjudicatory improvement periods, which they successfully completed, and the children were returned to their care in 2017.

Thereafter, in February of 2019, the DHHR filed the instant child abuse and neglect petition against the parents. The DHHR alleged that police officers responded to a 9-1-1 call in which it was reported that a man was stumbling down the middle of a road with a small child. Officers responded to the call and observed petitioner and the child, M.S. Petitioner initially lied to the

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

officers about his identity, but one officer was able to positively identify him. The officers informed petitioner that there was an active warrant for his arrest. Petitioner then shoved M.S. towards the officers and fled on foot but was quickly apprehended and arrested.[2] After petitioner's arrest, officers proceeded to drive to his home and found the front door open. Upon entering the home, officers found the mother slumped over the washing machine passed out and A.S. wandering the house in a dirty diaper. The DHHR alleged that officers discovered drugs and drug paraphernalia throughout the home and within reach of the children. Further, the DHHR noted that the children had access to the basement, which contained two feet of standing water with exposed electrical wiring. The DHHR concluded that petitioner's drug use caused him to provide an unsafe home environment and that he failed to perform proper parenting responsibilities.

At an adjudicatory hearing held in April of 2019, petitioner stipulated to certain allegations contained in the petition. Specifically, petitioner stipulated that officers observed him under the influence and arrested him on an outstanding warrant. Petitioner also stipulated to the conditions of the home, including that drugs and drug paraphernalia were located within the children's reach. The circuit court accepted petitioner's stipulation and adjudicated him as a neglecting parent. Petitioner was released from incarceration in May of 2019.

On June 5, 2019, the circuit court granted petitioner a post-adjudicatory improvement period, the terms and conditions of which included that petitioner would not violate any federal, state, and/or local laws; would maintain weekly contact with the DHHR; would participate in random drug screens; would obtain and maintain safe and appropriate housing; and would successfully complete an out-patient drug treatment program. Subsequently, on June 25, 2019, the DHHR filed a motion to terminate petitioner's improvement period. In that motion, the DHHR alleged that petitioner violated the terms of his improvement period by committing two burglaries on June 7, 2019, and admitted the same to police officers. Petitioner was charged with burglary and grand larceny in one criminal complaint and burglary and petit larceny in a second complaint. The DHHR concluded that petitioner demonstrated an inability to satisfactorily complete his post-adjudicatory improvement period by failing to comply with random drug screens and violating state criminal laws. After holding a hearing on the motion, the circuit court terminated petitioner's post-adjudicatory improvement period.

In September of 2019, the circuit court held a dispositional hearing. The DHHR presented the testimony of a Child Protective Services ("CPS") worker, who testified that petitioner failed to comply with the terms of his post-adjudicatory improvement period and remained incarcerated as of the dispositional hearing. A Court Appointed Special Advocate ("CASA") representative also testified that petitioner failed to comply with an improvement period, as he was arrested mere days after having been granted one. Counsel for petitioner requested that the circuit court impose disposition pursuant to West Virginia Code § 49-4-604(b)(5) (2019).[3] Counsel for petitioner

---

[2]Although not entirely clear from the briefs and the record before this Court, it appears that this arrest and incarceration was due to petitioner violating the terms of his probation. The underlying charges for which he received probation are unknown.

[3]Pursuant to West Virginia Code § 49-4-604(b)(5) (2019), a circuit court may "commit the child temporarily to the care, custody, and control of the state department, a licensed private child

argued that petitioner's drug abuse was "[a]t the heart of this matter" and "caused [petitioner] to be incarcerated for essentially all of this matter." Petitioner's counsel admitted that petitioner was released from incarceration but was "under the influence of drugs," resulting in his reincarceration after only a few days upon charges of burglary and larceny. Petitioner's counsel claimed that petitioner accepted responsibility for his actions and had a bond with the children.

The circuit court took judicial notice of petitioner's prior abuse and neglect proceeding and noted that petitioner successfully completed an improvement period. Citing petitioner's previous participation in an improvement period, the circuit court noted that petitioner "knew what [he] had to do to get [his] children back." The circuit court also opined that, following the dismissal of the prior petition, the situation had apparently worsened. Further, petitioner was unable to participate in his improvement period during the proceedings below due to his criminal activity and incarceration. Ultimately, the circuit court terminated petitioner's parental rights. The circuit court determined that petitioner was presently unwilling or unable to adequately provide for the children's needs and that there was no reasonable likelihood that he could correct the conditions of abuse in the near future. Petitioner appeals the circuit court's September 10, 2019, dispositional order terminating his parental rights.[4]

The Court has previously established the following standard of review in cases such as this:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

---

welfare agency, or a suitable person who may be appointed guardian by the court" upon a finding that "the abusing parent or battered parent or parents are presently unwilling or unable to provide adequately for the child's needs."

Additionally, although the Legislature amended West Virginia Code § 49-4-604 effective June 5, 2020, including renumbering the provisions, the amendments do not impact this case.

[4]The mother's parental rights were also terminated below. The permanency plan for the children is adoption by their current foster family.

Petitioner argues that the circuit court erred in terminating his parental rights rather than imposing disposition pursuant to West Virginia Code § 49-4-604(b)(5) (2019). According to petitioner, imposing "Disposition 5" would have allowed him to address his "issues" after his release from incarceration, "when he would be better suited to do so." Petitioner contends that terminating his parental rights, rather than imposing this less-restrictive alternative, was erroneous because he previously successfully completed an improvement period during prior child abuse and neglect proceedings. Further, petitioner contends that he shares a strong bond with the children, which also supports the imposition of a less-restrictive alternative. Lastly, petitioner contends that he was not afforded enough time to correct the conditions of abuse because he was incarcerated and "unable to make any meaningful change or improvement while not incarcerated." We disagree.

West Virginia Code § 49-4-604(b)(6) (2019) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(c)(3) (2019) provides that a situation in which there is "[n]o reasonable likelihood that [the] conditions of neglect or abuse can be substantially corrected" includes when the abusing parent

> ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

Here, the evidence demonstrates that there was no reasonable likelihood that petitioner could correct the conditions of neglect in the near future. The record indicates that petitioner was released from incarceration in May of 2019 and was thereafter granted an improvement period in June of 2019. However, only days after having been granted an improvement period, petitioner allegedly committed two burglaries and was incarcerated. In fact, petitioner remained incarcerated as of the filing of this appeal. During the short time petitioner was released from incarceration, he failed to submit to any drug screens or attempt to address the conditions of abuse and/or neglect. Indeed, petitioner admits in his brief on appeal that he was "unable to make any meaningful change or improvement while not incarcerated." Although petitioner argues that he was not afforded enough time to address the conditions of abuse and/or neglect, his actions led to his reincarceration during the proceedings and prevented him from actively participating in his improvement period. Further, while petitioner argues that he was likely to correct the conditions of abuse and/or neglect because he previously successfully completed an improvement period, we note that, despite having been provided a myriad of services in the prior proceedings, petitioner was once again the subject of abuse and neglect proceedings for similar, but worsened, conditions of neglect less than two years later. As such, despite his seeming compliance with his prior improvement period, petitioner did not maintain his parental improvement or truly address his issues of neglect. Lastly, petitioner fails to cite to any portion of the record wherein he established that he had a significant bond with the children. Based on the foregoing, it is clear that there was no reasonable likelihood that petitioner could correct the conditions of abuse and/or neglect given that he was granted an improvement period but failed to make any effort to address the conditions and committed further criminal acts resulting in his incarceration.

To the extent that petitioner claims a less-restrictive alternative to the termination of his parental rights should have been imposed, we have previously held that "[c]ourts are not required to exhaust every speculative possibility of parental improvement before terminating parental rights where it appears that the welfare of the child will be seriously threatened[.]" Syl. Pt. 5, *In re N.H.*, 241 W. Va. 648, 827 S.E.2d 436 (2019) (citation omitted). Moreover,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604 (2019)] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c) (2019)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Petitioner's claims that he could correct the conditions of abuse after his incarceration are without merit. Despite having previously been granted services, petitioner's neglect of the children worsened. He refused to participate in services during the underlying proceedings, instead choosing to engage in criminal activity resulting in his incarceration. Further, petitioner offers no potential release date from incarceration. Thus, it is unknown at what point he will be able to address his issues. As the circuit court found below, the children need continuity in care, and the termination of petitioner's parental rights was in their best interests. Because the circuit court's findings are fully supported by the record below, we find no error in the termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 10, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: June 24, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

5