**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**


*In re* **S.G.**

**No. 21-0109** (Braxton County 20-JA-20)


**MEMORANDUM DECISION**


Petitioner Father J.G. II, by counsel Jonathan Fittro, appeals the Circuit Court of Braxton County's January 4, 2021, order terminating his parental rights to S.G.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Julia R. Callaghan, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in finding that termination of his parental rights was necessary to achieve permanency and by failing to find that termination was necessary for the child's welfare.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The proceedings below began upon the filing of an initial petition that is not included in the appendix record on appeal. By February of 2020, the DHHR filed an amended petition in regard to several children and adult respondents who are not at issue on appeal. Relevant to the current matter, the DHHR included allegations against petitioner in regard to S.G. and two older children who are not at issue. Relevant to petitioner's appeal, however, is the fact that petitioner was adjudicated of abandoning the two older children. According to the record, petitioner had not had contact with these children for approximately eight years and had not provided any support,

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

financial or otherwise, since their births. By June of 2020, petitioner's parental rights to the older children had been terminated.

In regard to the specific issues presented in this appeal, the DHHR filed a second amended petition in July of 2020. According to this petition, petitioner abused and/or neglected S.G. by virtue of the prior involuntary termination of his parental rights to the older children. Further, the DHHR alleged that the circuit court previously ordered petitioner "to avail himself of visits with [S.G.]," abstain from drugs and alcohol, submit to drug screens, participate in parenting and life skills classes, participate in a psychological evaluation, and maintain contact with the DHHR. According to the DHHR, petitioner had not complied with these directions since March 12, 2020. The petition further alleged that on June 18, 2020, petitioner was arrested in Virginia and charged with five felonies involving weapons, drugs, and reckless endangerment. Finally, the DHHR alleged that at the time the petition was filed, petitioner lacked safe and suitable housing.

In September of 2020, the circuit court held an adjudicatory hearing, during which a law enforcement officer testified to petitioner's recent arrest. The DHHR also presented testimony from a Child Protective Services worker who explained that petitioner had not submitted to any drug screens, participated in any services, or exercised any visits with the child. The witness also indicated that petitioner lacked suitable housing for the child. Petitioner testified and admitted that he lacked suitable housing. Petitioner also disputed the evidence regarding his lack of participation, indicating that he had, in fact, participated in some services. Ultimately, the court found that the evidence established that petitioner was an abusive and neglectful parent.

Later that same month, the court held a dispositional hearing, during which the DHHR introduced evidence that, prior to his incarceration, petitioner failed to comply with any of the court's orders, visit with the child, or participate in services. Based on the evidence, the court found that petitioner had no suitable home for the child, had not visited the child, and had not participated in services. In short, the court found that petitioner was simply unwilling to comply with its orders. At the time, petitioner requested that the court impose a less-restrictive alternative to termination of his parental rights in the form of eventually returning the child to the legal and physical custody of the mother so that petitioner could retain his parental rights and seek visitation with the child upon his eventual release from incarceration. The court found, however, that petitioner "can point to no part of the record that demonstrates he will, upon release from incarceration, come before this [c]ourt to seek visitation," especially given that "[h]e failed to exercise any visitation even before his incarceration." The court also noted that on the day petitioner was scheduled to appear for the dispositional hearing in regard to his two older children, he was arrested in Virginia for "engaging in conduct that led to multiple felony charges." The court then found that the child deserved permanency and that petitioner retaining his parental rights thwarted that goal. The court also found that termination of petitioner's parental rights was in the child's best interests, given that petitioner, "through his conduct, has not given . . . any evidence that [S.G.] can in the future count upon him to provide for her" and, in fact, demonstrated that he was not "interested in exercising his parental rights and responsibilities" to the child. The court also found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that there was no less-restrictive alternative to termination of his

2

parental rights. As such, the court terminated petitioner's parental rights.[2] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues a very narrow legal issue concerning the circuit court's findings regarding the child's permanency. Petitioner cites to the requirement in West Virginia Code § 49-4-604(c)(6) that, in order to terminate parental rights, a circuit court must first find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected in the near future and that termination is necessary for the child's welfare. Before this Court, petitioner concedes that he "cannot challenge the factual finding that the condition of neglect could not be substantially corrected in the near future." Instead, petitioner asserts that the circuit court erred in finding that termination of his rights was necessary to achieve permanency and in failing to find that termination was necessary for the child's welfare. We find these arguments unavailing.

First, petitioner takes issue with the specific wording of the circuit court's finding that termination of his rights was in the child's best interests. According to petitioner, this does not equate to being necessary for the child's welfare, and, had the Legislature intended for this to be the applicable burden, it could have easily included this language. We find, however, that this argument is one of pure semantics and entitles petitioner to no relief. While it may be true that the circuit court did not specifically invoke the word "welfare," the court's findings on the whole clearly show that termination of petitioner's parental rights was necessary for the child's welfare. Indeed, the court made extensive findings concerning the need to terminate petitioner's parental rights in order to protect the child, including the fact that petitioner wholly abdicated his parental rights and responsibilities. As the court found, petitioner's rights to two older children had previously been terminated due to his abandonment, and he further failed to comply with a single

---

[2]The child's mother voluntarily relinquished her parental rights. The permanency plan for the child legal guardianship with the current foster parents.

order of the circuit court even before his incarceration. As the court found, petitioner established through his conduct that he would never make any effort to even visit S.G., let alone assume any responsibility for the child. As such, it is clear that the child's welfare necessitated termination of petitioner's parental rights.

As to petitioner's contention that termination of his parental rights was not required to achieve permanency for the child, this argument is based entirely on speculation. Petitioner fails to cite to a single piece of evidence in support of this argument, instead relying entirely on his belief that the mother may regain custody of the child such that termination of his rights is not necessary or that the child's current foster parents may choose legal guardianship over the child instead of seeking to adopt. Not only is petitioner's speculation insufficient to entitle him to relief, he ignores two important points. The first is that this Court has previously held that "simply because one parent has been found to be a fit and proper caretaker for [the] child does not automatically entitle the child's other parent to retain his/her parental rights if his/her conduct has endangered the child and such conditions of abuse and/or neglect are not expected to improve." *In re Emily*, 208 W. Va. 325, 344, 540 S.E.2d 542, 561 (2000). Assuming petitioner is correct that the mother is successful in her improvement period and ultimately regains custody of the child, it would in no way entitle petitioner to a less-restrictive disposition. As petitioner concedes on appeal, he was properly adjudicated of neglecting the child; this conduct clearly endangered her. Further, petitioner does not contest the finding that the conditions cannot be improved. As such, termination of his parental rights was appropriate. The second point that petitioner ignores concerns his argument that the foster parents may seek legal guardianship, which he asserts obviates the need for termination of his parental rights. While again entirely speculative, petitioner disregards this Court's direction that "'an adoptive home is the preferred permanent out-of-home placement.' Syl. Pt. 2, in part, *State v. Michael M.*, 202 W.Va. 350, 504 S.E.2d 177 (1998)." *In re N.H.*, 241 W. Va. 648, 658, 827 S.E.2d 436, 446 (2019). As such, termination of petitioner's parental rights was necessary to achieve adoption, should the child's foster parents ultimately choose that option.

Ultimately, petitioner's argument on appeal is legally flawed. According to petitioner, "the [L]egislature recognized that even though a parent might not be in a position to be of benefit to the child currently, it doesn't mean that . . . no circumstance could arise where preserving the legal relationship between a parent and child might be beneficial to that child." This Court has long rejected this exact argument, having explained that "courts are not required to exhaust every speculative possibility of parental improvement before terminating parental rights" when necessary to protect the child. Syl. Pt. 1, in part, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980). Simply put, we refuse to find error in the circuit court's termination of parental rights simply because petitioner, whose rights to two older children were terminated due to abandonment and who refused to even visit S.G. during the proceedings, believes that he may one day show interest in his child.

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 4, 2021, order is hereby affirmed.

Affirmed.

4

**ISSUED**: October 1, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton