**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **M.W.**

**No. 25-7** (Boone County CC-03-2023-JA-39)

## MEMORANDUM DECISION

Petitioner Mother L.W.[1] appeals the Circuit Court of Boone County's December 5, 2024, order terminating her parental rights to M.W., arguing that the circuit court erred in finding that the DHS made reasonable efforts to preserve and reunify the family and in failing to impose a less restrictive dispositional alternative.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

Prior to the events giving rise to these proceedings, the child was placed in a legal guardianship in December 2022. When the guardianship was disrupted in April 2023, the petitioner filed a petition to regain custody of the child. However, the petitioner tested positive for methamphetamine and an investigation by Child Protective Services ("CPS") revealed that the petitioner's home lacked proper waste disposal and that she had illegally obtained electricity. Accordingly, the court declined to return the child to the petitioner and ordered the DHS to file a petition. In June 2023, the DHS filed a petition alleging that the petitioner abused illegal substances and was unable to provide the child with safe and adequate housing.

At an adjudicatory hearing in August 2023, the petitioner stipulated to abusing illegal substances which negatively impacted her parenting abilities. On this basis, the circuit court adjudicated the petitioner abusive and neglectful of M.W. In September 2023, the court granted the petitioner's motion for a post-adjudicatory improvement period, the terms of which included that she maintain sobriety, continue to drug screen, participate in outpatient substance abuse treatment and family treatment court (if accepted), and obtain and maintain appropriate housing and a stable source of income.

---

[1] The petitioner appears by counsel Timothy P. Gibson, Jr. The Department of Human Services ("DHS") appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Andrew T. Waight. Counsel Catherine Bond Wallace appears as the child's guardian ad litem ("guardian").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

The circuit court held a dispositional hearing in November 2024. The court heard testimony from a CPS worker who stated that the petitioner had successfully completed her improvement period and remedied her substance abuse problem.[3] However, the worker also testified that the child had been diagnosed with severe post-traumatic stress disorder and was receiving treatment from a psychiatrist and a counselor. The child, then fifteen years old, had firmly and repeatedly expressed a desire to have no contact with the petitioner and to remain in her foster placement where she felt safe. The child also self-harmed on more than one occasion, once after the worker brought the child gifts from the petitioner and once after the worker mentioned scheduling a visit with the petitioner. Given the child's "severe reaction[s]," the worker did not feel it was safe to attempt family therapy. Regardless, the child resolutely refused to engage in any services to heal her relationship with the petitioner, and the worker testified that the child's feelings were unlikely to change in the near future no matter what services the DHS offered. Another CPS worker testified that the DHS recommended terminating the petitioner's rights so that the child could achieve permanency through adoption. The worker corroborated that the child was "very firm in her position" that she did not want to be returned to the petitioner's care given "her years of abuse and neglect" and instead wanted to be adopted. The child expressed anxiety about a potential guardianship, as she feared it might allow the petitioner to regain custody in the future. The worker also believed that the damage done to the parent-child relationship could not be repaired in the near future with or without the DHS's help.

The court also heard from the psychologist who conducted the child's forensic psychological evaluation, who testified as an expert witness. The psychologist stated that the child feared the petitioner and "had a very negative opinion of [her]," as well as "a strong preference for avoiding being returned to her care" due to "various types of abuse and neglect" the child had experienced throughout her upbringing. The psychologist opined that the child was fully capable of expressing her wishes, even though the way "[the child] presented . . . information was more juvenile than one would anticipate based on her actual chronological age." The psychologist further testified that without the child's willing participation, repairing the parent-child relationship "would be very, very difficult." According to the psychologist, while family therapy would be a helpful tool, both parties must be willing to work together. Without this, the psychologist did not believe family therapy would be effective. Ultimately, given the child's history of mental health issues, including self-harm, the psychologist expressed concern regarding reunification.

Finally, the petitioner testified that she had earned a certificate of completion from family treatment court, was "staying clean," participating in weekly recovery meetings as well as individual therapy, and had a suitable home, a vehicle, and employment. She had achieved almost fifteen months of sobriety. The petitioner testified that she "would rather [the child] stay where she is . . . [i]f she is happy there" and did not want the court to force the child to attend family therapy. Thus, the petitioner did not request reunification but instead asked the court to terminate only her custodial rights and place the child in a guardianship, as the petitioner perceived this to

---

[3] The court also heard testimony from the petitioner's case manager at her recovery program, who testified to her excellent participation and stated that she had been a role model. The director of the petitioner's former sober living home also testified that the petitioner was "a recovery rock star" who "met or exceeded all . . . requirements."

be less permanent.[4] The petitioner also asked to be permitted to pursue visitation in the future if the child desired it. The petitioner further acknowledged that the child had suffered psychologically, was struggling to overcome her trauma, and that there was nothing further that she could do to repair the relationship.

Based on this evidence, the circuit court found that the petitioner had "accomplished amazing things" throughout her improvement period, but was unable, despite her willingness, to remedy the harm her substance abuse had caused the child. The court expressed uncertainty that "any amount of resources . . . could possibly heal th[eir] relationship." In its subsequent written order, the court found that "[t]he child had been repeatedly and severely emotionally injured over her entire life by [the petitioner's] substance abuse and may never overcome it," to the point that the child self-harmed at the thought of being around the petitioner. The court also noted that the child was "almost [sixteen] years old and . . . [had] shown no signs of budging in her insistence that she have nothing to do with [the petitioner]." The court therefore concluded that the child's "emotional injuries [could not] be remedied in the near future either with or without help" and that "the only way that the child . . . [could] ever [be] open to repair[ing] the relationship [would be] to give her a permanent, safe, secure, and stable home from which [to] heal." The court found that the DHS made reasonable efforts to achieve reunification, but that, considering the "history . . . and the unique factors . . . in this matter," termination was in the child's best interest and was the least restrictive alternative available. Accordingly, the court terminated the petitioner's parental rights to M.W.[5] The court also ordered that contact between the petitioner and the child could occur in the future if the child wished. It is from this dispositional order that the petitioner now appeals.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, the petitioner argues that the circuit court erred in finding that the DHS made reasonable efforts to preserve and reunify the family. *See* W. Va. Code § 49-4-604(c)(6)(C)((iv) (requiring a circuit court's dispositional order to indicate "[w]hether or not the department made reasonable efforts to preserve and reunify the family . . . or that those efforts were unreasonable due to specific circumstances"). The petitioner does not dispute that both she and the child received individual services, but argues that "the [DHS] failed to foster an atmosphere that would have resulted in an improved relationship between [the petitioner] and [the child]," specifically noting that the DHS did not attempt family therapy or supervised visitation and that the child's psychological evaluation should have been conducted sooner. The petitioner is correct that one "'goal' of [an] improvement period . . . 'should be . . . to foster an improved relationship between parent and child.'" *In re M.M.*, 244 W. Va. 316, 325, 853 S.E.2d 556, 565 (2020) (quoting *In re Carlita B.*, 185 W. Va. 613, 625, 408 S.E.2d 365, 377 (1991)). Here, however, the court concluded that an improved parent-child relationship was not attainable, even with help, given the repeated and severe emotional injury the petitioner's

---

[4] The guardian similarly recommended that the court terminate only the petitioner's custodial rights, believing that the child could "maintain her safety and security in the home where she is with the guardian she has."

[5] M.W.'s father is deceased. The permanency plan for the child is to be adopted in the current placement.

substance abuse had caused the child. The record indicates that the child could not overcome these emotional injuries despite the DHS's provision of counseling and psychiatric services (and despite the petitioner's participation in services throughout her improvement period). The court also noted the child's self-harm at the thought of being around the petitioner. The circuit court therefore concluded that the DHS made reasonable efforts to achieve reunification, while also including findings to explain why attempting family therapy or supervised visitation was not reasonable. Under our standard of review, we may not disturb these findings on appeal. *See* Syl. Pt. 1, in part, *In re Tiffany Marie S.*, 196 W. Va. 233, 470 S.E.2d 177 (1996) (holding that a reviewing court shall not set aside a circuit court's finding of fact unless the finding is clearly erroneous). Further, the petitioner does not explain how conducting the child's psychological evaluation earlier would have altered the outcome of the proceedings, given the child's steadfast opposition to having contact with the petitioner and the psychologist's conclusion that family therapy would be helpful only if the child was willing to participate. Ultimately, we find that the termination of the petitioner's parental rights was not attributable to the DHS's lack of effort or violation of its statutory obligations. As such, the petitioner is not entitled to relief.

Next, the petitioner asserts that, rather than terminating her parental rights, the circuit court should have employed a less restrictive alternative—specifically, terminating only her custodial rights and placing the child in a guardianship in her current placement. However, the evidence outlined above supports the circuit court's decision, as "[t]ermination of parental rights . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)(6)] that conditions of neglect or abuse can be substantially corrected." Syl. Pt. 5, in part, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (quoting Syl. Pt. 2, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980)). There is no such reasonable likelihood where "[t]he abusing parent . . . [has] repeatedly or seriously injured the child . . . emotionally, . . . and the degree of family stress . . . [is] so great as to preclude the use of resources to mitigate or resolve family problems." W. Va. Code § 49-4-604(d)(5). This is precisely what the circuit court found—that the petitioner's neglect for the majority of the child's life caused the child severe emotional injury and profoundly damaged the parent-child relationship. Especially given the child's self-harm at the prospect of being in the petitioner's presence, the court found that no amount of services could remedy these issues in the near future. Moreover, the court found that the child's welfare required termination, as achieving permanency through adoption would provide a secure and stable home for the child to continue her attempts to heal. As we have repeatedly held, "[t]he controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, in part, *In re N.H.*, 241 W. Va. 648, 827 S.E.2d 436 (2019) (quoting Syl. Pt. 4, in part, *In re B.H.*, 233 W. Va. 57, 754 S.E.2d 734 (2014)); *see also In re Calita B.*, 185 W. Va. 613, 629, 408 S.E.2d 365, 381 (1991) ("In the difficult balance . . . between the rights of the parent and the welfare of the child, we have consistently emphasized that the paramount and controlling factor must be the child's welfare."). Circuit courts are permitted to terminate a parent's rights upon these findings. *See* W. Va. Code § 49-4-604(c)(6). As such, we conclude that the circuit court did not err in terminating the petitioner's parental rights.

Finally, the petitioner argues that the circuit court gave the child's wish to be adopted too much weight in reaching its dispositional decision. At disposition, West Virginia Code § 49-4-604(c)(6)(C) requires a circuit court to "give consideration to the wishes of a child [fourteen] years of age or older regarding the permanent termination of parental rights." *See also* Syl Pt. 4, in part, *In re J.A.*, 242 W. Va. 226, 833 S.E.2d 487 (2019) (explaining that "[a] circuit court is not

obligated to comply with the child's wishes, but shall make the termination decision based upon a consideration of the child's best interests"). After weighing all the evidence presented, including the child's preference, the circuit court determined that the child's best interests required termination. Under our deferential standard of review, we decline to disturb this finding on appeal. *See In re D.S.*, 251 W. Va. 466, --, 914 S.E.2d 701, 707 (2025) ("We review [a] circuit court's decision under . . . deferential standards . . . and do not reweigh the evidence.").

For the foregoing reasons, we find no error in the decision of the circuit court, and its December 5, 2024, order is affirmed.

Affirmed.

**ISSUED**: November 4, 2025

**CONCURRED IN BY**:

Justice C. Haley Bunn
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Senior Status Justice John A. Hutchison

**NOT PARTICIPATING:**

Chief Justice William R. Wooton