**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **J.C. and E.C.**

**No. 25-223** (Nicholas County CC-34-2023-JA-59 and CC-34-2023-JA-60)

## MEMORANDUM DECISION

Petitioner Mother K.F.[1] appeals the Circuit Court of Nicholas County's March 3, 2025, order terminating her parental and custodial rights to J.C. and E.C., arguing that the circuit court erred in failing to grant her an improvement period and in terminating her rights.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

Prior to the instant appeal, the proceedings below were previously before this Court. *See In re B.H.*, No. 23-599, 2024 WL 4382118 (W. Va. Sept. 24, 2024) (memorandum decision). Briefly, the DHS's initial petition concerned the petitioner's history of domestic violence and a specific incident of domestic violence between the petitioner and J.S., the father of J.C. and E.C.'s half-sibling.[3] *Id*. at *1. At that time, J.C. and E.C. primarily resided in the care of their nonabusing father. *Id*. At adjudication, the circuit court found that the children were abused and neglected despite the fact that no evidence was presented regarding J.C.'s and E.C.'s exposure to domestic violence.[4] *Id*. Following a dispositional hearing in September 2023, the court terminated the petitioner's parental and custodial rights to J.C. and E.C. as well as to their half-sibling. *Id*. at *2.

The petitioner appealed the circuit court's September 18, 2023, dispositional order. This Court vacated this order, as well as the court's prior adjudicatory orders, and remanded the matter

---

[1] The petitioner appears by counsel Brandy L. Hughart. The Department of Human Services ("DHS") appears by counsel Attorney General John B. McCuskey and Assistant Attorney General James Wegman. Counsel Amber R. Hinkle appears as the children's guardian ad litem.

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

[3] Neither J.S. nor J.C. and E.C.'s half-sibling is at issue in this appeal.

[4] The DHS subsequently filed an amended petition to include the petitioner's failure to protect J.C. and E.C.'s half-sibling due to her willing violation of the court's prior order prohibiting contact with J.S., whose parental rights to the half-sibling had been terminated. *Id*. at *2. Following a second adjudicatory hearing in August 2023, the court confirmed its prior order adjudicating each of the children as abused and neglected. *Id*.

1

for the court to properly adjudicate J.C. and E.C. *Id*. at *2, *3. Following the remand, the DHS filed a second amended petition to include J.C. and E.C.'s statements from forensic interviews conducted in June 2023, shortly after the initial petition was filed. E.C. disclosed that J.S. resided with the petitioner and that the couple frequently argued and would "throw stuff at each other." J.C. reported that the couple fought and would "put hands on each other," which made J.C. feel scared and cry. The court held an adjudicatory hearing in November 2024, at which time the petitioner stipulated to the allegations in the second amended petition.[5] On this basis, the court adjudicated J.C. and E.C. as abused and/or neglected children. Prior to the hearing, the petitioner moved for a post-adjudicatory improvement period, which the court held in abeyance.

In February 2025, the court took up the petitioner's motion for a post-adjudicatory improvement period together with disposition. The assigned CPS worker testified that the DHS recommended termination, due to the petitioner's history of domestic violence and failure to adhere to a prior court order.[6] The worker also stated that she had received minimal communication from the petitioner, who had sent her only one text message regarding J.C. and E.C.'s half-sibling. J.C. and E.C.'s therapist testified that the children's exposure to domestic violence while in the petitioner's care had resulted in emotional trauma. E.C. suffered from post-traumatic stress disorder and had described witnessing "violent attacks toward[] her younger [half-sibling]." The therapist testified that the children unequivocally stated that "they [did] not want to talk or be seen with [the petitioner]."

A nurse practitioner testified to the petitioner's bipolar disorder diagnosis, stating that the petitioner re-established services at her facility in November 2024 after moving back to West Virginia from Ohio. Since then, the petitioner had been "compliant with her appointments," took her medication as prescribed, and was stable. The nurse practitioner believed that the petitioner had "gained some insight into her disorder" as she was now following all treatment recommendations. The petitioner's therapist testified that she began treating the petitioner in November 2024 and that they had worked together for "six or seven sessions." The therapist stated that the petitioner expressed guilt for her past behavior and reported receiving extensive therapy services while living in Ohio. However, the therapist admitted that she did not personally receive or review the petitioner's records from Ohio to verify this treatment. Finally, the petitioner testified that, as a result of her medication and efforts in therapy, she was "a completely different person." She reported that she was in "a stable relationship," had "stable income" and a suitable home, and took "full accountability for [her] actions and the impact they . . . had on [the] children," acknowledging that she had caused them "harm and pain." The petitioner further admitted that she was in arrears on child support payments and that she did not attend therapy for approximately five months between June and November 2024.

In its subsequent written order, the court weighed "whether [the petitioner] should be granted an improvement period or whether her . . . rights should be terminated" and concluded that termination was appropriate. In support, the court highlighted the "long-term unstable environment" the petitioner had created for the children. The court further found that the petitioner

---

[5] The petitioner did not include a transcript of the November 2024 adjudicatory hearing in the record on appeal.

[6] *See supra* n.4.

had seriously injured the children emotionally such that the degree of family stress and the potential for further abuse and neglect precluded the use of resources to resolve the family problems or to assist the petitioner in fulfilling her parental responsibilities. While the court acknowledged the petitioner's receipt of "some counseling," it noted her participation had been "intermittent" given her recent five-month gap in attendance. The court felt this "demonstrate[d] her apathy and lack of effort," as did the fact that she had contacted the CPS worker only once. The court also noted that the petitioner had a history of ignoring its orders and that the DHS had recently filed a motion to show cause, alleging that the petitioner had been in contact with the children and had attended a school event in violation of the court's no-contact order from the bench at disposition. Ultimately, given the petitioner's extensive history of domestic violence, the court found that she "ha[d] done far too little to address the issues" and that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future. Additionally, the court found that "[t]he children ha[d] suffered far too much" and "deserve[d] a stable, loving, and permanent home environment" as well as continuity of care and caretakers. The court therefore determined that there was no alternative to termination of the petitioner's parental and custodial rights to the children.[7] The petitioner now appeals this dispositional order.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, the petitioner first asserts that the circuit court erred by failing to grant her an improvement period. Pursuant to West Virginia Code § 49-4-610(2)(B), circuit courts may grant an improvement period when a parent "demonstrates, by clear and convincing evidence, that [she] is likely to fully participate." We have previously explained that "the granting of an improvement period is within the circuit court's discretion," and an improvement period need not be granted when no improvement is likely. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002); *see also In re Charity H.*, 215 W. Va. 208, 216, 599 S.E.2d 631, 639 (2004) (explaining that a parent is not "unconditionally entitled to an improvement period"). The petitioner argues that the evidence—specifically, her testimony and that of her nurse practitioner and therapist—clearly demonstrated that she was likely to participate in an improvement period and that the court was "completely dismissive" of her efforts to treat her mental health. This argument does not entitle the petitioner to relief, as this Court will not reweigh the evidence presented to the circuit court. *See State v. Guthrie*, 194 W. Va. 657, 669 n.9, 461 S.E.2d 163, 175 n.9 (1995) ("An appellate court may not . . . weigh evidence as that is the exclusive function and task of the trier of fact."); *see also In re D.S.*, 251 W. Va. 466, --, 914 S.E.2d 701, 706, 707 (2025) (explaining that, as a reviewing court, "[w]e . . . do not reweigh the evidence" and "must affirm a finding if the circuit court's account of the evidence is plausible in light of the record" (quoting Syl. Pt. 1, in part, *In re Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177(1996))). Here, the court heard and weighed all the evidence, which included testimony concerning the petitioner's recent five-month gap in therapy attendance and minimal contact with the DHS. It then found that the petitioner's treatment was intermittent, that her efforts in the proceedings were insufficient, and that she had previously violated its orders. Consequently, the court did not grant the petitioner an improvement period, instead concluding that termination was

---

[7] J.C. and E.C.'s father is nonabusing, and the children's permanency plan is to remain in his custody.

appropriate. As the court's account of the evidence is plausible and the court acted within its discretion to deny the petitioner an improvement period, we will not disturb its findings on appeal.

Next, the petitioner asserts that the circuit court erred in terminating her parental rights, arguing that there was a reasonable likelihood that she could substantially correct the conditions that led to the petition's filing. We have held that "[t]ermination of parental rights . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)(6)] that conditions of neglect or abuse can be substantially corrected." Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (quoting Syl. Pt. 2, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980)); *see also* W. Va. Code § 49-4-604(c)(6). There is no such reasonable likelihood where "[t]he abusing parent . . . [has] repeatedly or seriously injured the child . . . emotionally, . . . and the degree of family stress and the potential for further abuse . . . are so great as to preclude the use of resources to mitigate or resolve family problems." *See* W. Va. Code § 49-4-604(d)(5). This is precisely what the circuit court found—noting that the petitioner had "seriously injured the children emotionally" having exposed them to a "long-term unstable environment" and that the petitioner's subsequent "intermittent counseling" was insufficient to remedy her long history of domestic violence. Moreover, the court considered the children's welfare, finding that J.C. and E.C. had "suffered far too much" and required a stable and permanent home environment and continuity of care and caretakers. As we have repeatedly held, "[t]he controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, in part, *In re N.H.*, 241 W. Va. 648, 827 S.E.2d 436 (2019) (quoting Syl. Pt. 4, in part, *In re B.H.*, 233 W. Va. 57, 754 S.E.2d 734 (2014)); *see also* Syl. Pt. 8, in part, *In re Willis*, 157 W. Va. 225, 207 S.E.2d 129 ("[T]he welfare of the [child] is the polar star by which the discretion of the court is to be guided in making its award of legal custody."). As the record indicates that there was no reasonable likelihood that the conditions of neglect could be substantially corrected in the near future and that termination was necessary for the children's welfare, we find that the court did not err in terminating the petitioner's parental and custodial rights. *See* W. Va. Code § 49-4-604(c)(6) (permitting circuit courts to terminate a parent's rights upon these findings).

For the foregoing reasons, we find no error in the decision of the circuit court, and its March 3, 2025, order is affirmed.

Affirmed.

**ISSUED**: January 29, 2026

**CONCURRED IN BY**:

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Justice Gerald M. Titus III

4